**UNITED STATES of America, Petitioner-Plaintiff,**

**v.**

**CERTAIN LAND IN the BOROUGH OF BROOKLYN, COUNTY OF KINGS, CITY AND STATE OF NEW YORK, and McDonald Holding Corp., et al., Defendants.**

**No. 63 CD 368.**

United States District Court E. D. New York.

Oct. 2, 1963.

Harry T. Dolan, Brooklyn, N. Y., Sp. Asst. to Atty. Gen., of United States, for petitioner-plaintiff.

Mendel Lurie, New York City, for defendant McDonald Holding Corp.

Langberg & Ringel, New York City, for defendant Beiserman Realty Corp.

BRUCHHAUSEN, District Judge.

Beiserman Realty Corporation moves for an order directing the payment to it of the sum of $23,500, deposited in the Registry of this Court, as estimated just

compensation for the taking of Parcel 2 herein. 40 U.S.C. § 258a authorizes such deposit.

McDonald Parking Lot, Inc., lessee of a tract, including Parcel 2 opposes such payment and makes claim for the payment to it of upwards of $20,000 for alleged damages it claims to have sustained.

 The property taken by the Government is the land, described by metes and bounds in the declaration of taking, including all buildings, structures or improvements to the land, which constitute a part of the realty, all appurtenances thereto and all estates or interests therein. Such a taking comprises real estate only. What constitutes real estate is determined by the law of the State wherein the property is located. United States v. Certain Property, etc., 2 Cir., 306 F.2d 439, 444.

## FACTS NOT IN DISPUTE

Prior to the taking, Beiserman Realty Corporation was the owner in fee of a parcel of real property, situated on the East side of McDonald Avenue, distant 100 feet south of Albemarle Road, in the Borough of Brooklyn, City of New York. It has a frontage on McDonald Avenue of 200 feet and a depth of 100 feet. On February 21, 1958 Beiserman entered into a lease of said parcel to McDonald Parking Lot, Inc., for the period of eleven years, commencing February 1, 1958 at a rental of $6000 for the first year, graduating upwards to $7200 for the last five years of the term. The lease set forth that the demised premises were to be used and occupied for the parking and storage of more than five vehicles and offices. By the declaration of taking, filed by the Government, it acquired title by eminent domain to the southerly forty feet of the aforesaid parcel. Upon the land so taken was a brick building, erected and owned by Beiserman and not by the lessee.

It is likewise not disputed that the lease contained various provisions, including the following:

"* * * All alterations, decorations, additions, or improvements (including paneling, partitions, railings, mezzanine floors, galleries and the like) except movable trade fixtures made by either party, shall become the property of landlord upon installation, unless landlord shall elect otherwise * * *.

"10. If the whole or any part of the demised premises shall be acquired or condemned by Eminent Domain for any public or quasi public use or purpose, then and in that event, the term of this lease shall cease and terminate from the date of title vesting in such proceeding and Tenant shall have no claim against Landlord for the value of any unexpired term of said lease.

"66. Any provision of Article 10 to the contrary notwithstanding, in the event not more than 20% of the area of the demised premises shall be acquired or condemned by eminent domain for any public or quasi-public use or purpose, then and in that event, the term of this lease shall continue and the demised premises shall be the balance thereof not the subject of condemnation and the tenant shall pay the rentals reserved herein for the said balance of the demised premises without diminution or abatement of any kind.

* * * * * *

"Nothing herein contained shall give to the tenant any claim against the landlord for the value of any portion of the demised premises taken in condemnation or the value of any unexpired term of said lease nor shall this Article in any way limit Article 10 of this lease except as hereinabove specifically provided."

## THE CLAIMS OF THE LESSEE

 The lessee claims that it is entitled to damages of upwards of $20,000. The major portion thereof it attributes to the diminution in value of the portion of the leased property which remained after the taking. It admits that Parcel 2,

318

the land so taken by the Government, does not constitute more than twenty percent of the demised premises. The lessee contends that if the aforementioned paragraph 66 of the lease becomes operative then the lease, by its terms, will remain in full force and effect for the remainder of the term without any apportionment of the rent; that although the parking lot is diminished in size by approximately one-fifth, the lessee will be obligated to pay the full rental, prescribed in the lease, for the remainder of its term, just as if there were no taking of one-fifth of the entire parcel; that the same number of employees will be required to operate the remaining four-fifths of the parcel and that there will be less rental space available, thus rendering the reduced parcel less economical in use.

The lessee in and by paragraph 66 of the lease agreed that in the event that not more than 20% of the demised premises be acquired by eminent domain (and, admittedly not more than 20% has been so taken) "then the term of this lease shall continue and the demised premises shall be the balance thereof not the subject of condemnation and the tenant shall pay the rentals reserved herein for the said balance of the demised premises without diminution or abatement of any kind * * *. Nothing herein contained shall give to the tenant any claim against the landlord for the value of any portion of the demised premises taken in condemnation or the value of any unexpired term of said lease."

It is abundantly ·clear that the lease, by its terms, terminated as to Parcel 2, the property taken in eminent domain, and continued only with respect to the portion of the demised premises, not so taken.

The lessee further claims that in order to make the remaining portion of the parking lot useable a new building, to replace the building taken with Parcel 2, must be built on the remaining portion at a cost to it of $4,000 and that it should be compensated for that item. In substance, the lessee appears to contend that

it is inequitable for it to be deprived of a facility included in the original demise, deprive it of its use and charge it in the future for the same annual rent, without diminution. While one may sympathize with the lessee in this predicament, the answer is that the terms of the lease militate against its claim. See also United States v. Petty Motor Co., 327 U.S. 372, 376, 66 S.Ct. 596, 90 L.Ed. 729 and United States v. 21,815 Square Feet of Land, etc., 2 Cir., 155 F.2d 898, 899.

The lessee, McDonald, alleges that it entered into a lease with another party whereby it agreed to provide available parking space for customers of its supermarket, being erected on an adjoining plot and that the taking of Parcel 2 will cause McDonald additional expense or damage, arising out of its inability to perform or by the expense of additional facilities. Such claim is not relevant and has no legal basis in this proceeding.

The lessee further claims that it blacktopped the demised premises at a cost of $5,000, and that 20% thereof or $1,000 is attributable to Parcel 2. The permanent annexation of such blacktopping to the land caused it to become the property of the owner. See United States v. Certain Property, etc., 2 Cir., 306 F.2d 439, at page 450.

The lessee also claims the sum of approximately $500 for a gas system allegedly installed by the tenant, and an additional sum, allegedly expended for wiring and for lights on a fence, bordering Parcel 2, required to be replaced or rebuilt on adjoining property, leased to McDonald. The general rule is that trade fixtures, installed by a tenant, are removable unless so affixed to the realty as not to be readily severable without material injury to the freehold. The owner concedes that the gas system and lighting fixtures are tradè fixtures and thus are removable. Whether such fixtures be movable or not, the moneys on deposit are not subject to claims therefor.

The motion is granted. Settle order· on notice.