**COUNTY OF McLENNAN et al., Appellants,**

v.

**Roy SHINAULT, Appellee.**

No. 3475.

Court of Civil Appeals of Texas.

Waco.

May 23, 1957.

Rehearing Denied June 13, 1957.

W. C. Haley, Sam Lanham, Waco, for appellants.

Zachry, Arnold & Jones, Waco, for appellee.

TIREY, Justice.

This is a condemnation case. The court submitted one issue only. It was: "(1) What amount of money, if any, will compensate the intervenor, Roy Shinault, for the taking of his leasehold interest for the remainder of the term of said lease, from the time of taking on July 18, 1956, to the termination of said lease on January 31, 1957? Answer in dollars and cents. Answer: $15,000.00."

In the decree we find substantially this recital: That condemnee, Roy Shinault, do have and recover from McLennan County and State of Texas as his own separate fund and estate, and McLennan County

and the State of Texas are hereby directed to pay to Roy Shinault as his own separate property the sum of $15,000 for leasehold interest caused by the taking of such interest; however, the sum of $1,225, which sum was drawn down from the court's award by the said Roy Shinault, shall be deducted from the $15,000, leaving a total sum to be paid to Roy Shinault of $13,775. The decree further provided that such sum shall bear interest from July 18, 1956, which is the date the County deposited its award in the court, until paid at the rate of six per cent per annum, and taxed the costs against McLennan County and the State of Texas.

The condemnor seasonably filed its first amended motion for new trial, and, it being overruled, perfected its appeal to this court.

Appellants assail the judgment on nine separate points. Points 1 to 4 inclusive and point 9 are substantially to the effect that the court erred (1) in failing to sustain appellants' special exception to pleadings of appellee, wherein appellee sought recovery for items of damage other than "proceeds recoverable for the removal of improvements, or damages to improvements upon such property," for the reason that the lease agreement under which appellee claimed as a tenant, and the agreement of the parties and order of the court, contained in the court's severance order, limited appellee's recovery to "proceeds recoverable for the removal of improvements or damages to improvements upon such property;" (2) in admitting evidence offered by appellee, for the purposes of proving items of damage other than "proceeds recoverable for the removal of improvements or damages to improvements upon such property," for the reason that the lease agreement under which appellee claimed as a tenant, and the agreement of the parties and order of the court contained in the court's severance order, limited appellee's recovery to "proceeds recoverable for the removal of improvements or dam-

ages to improvements upon such property;" (3) in submitting to the jury the wrong measure of damages under the facts of this case, by asking the jury what damages appellee suffered for the remainder of the term of the lease until January 31, 1957, because under the undisputed evidence and the agreement of the parties and the order of the court, the lease terminated by its own terms on the date of taking by condemnors, and appellee should have been limited to a recovery of damages to improvements or cost of removal of improvements; (4) in rendering judgment for appellee for damages for the remainder of the term of the lease up until January 31, 1957, because under the undisputed evidence and the agreement of the parties to the suit, the lease terminated by its own terms on the date of taking by condemnors and appellee should have been limited to a recovery of damages to improvements or cost of removal of improvements; and (9) the verdict of the jury and the judgment of the court are excessive.

The first four points relate to the pleadings, the evidence, the charge and the judgment and we think present only one major legal question. We quote substantially from appellants' statement:

This condemnation suit was originally instituted against R. E. Failing, Roy Shinault, Cecil Epps and Jefferson Standard Life Insurance Company. It appears that Epps had an apparent lease on a portion of the property, and Jefferson Standard Life Insurance Company was the holder of a lien against the title to said property. Failing was the record owner in fee simple of the property at the time the suit was filed and a portion of the property was leased to appellee.

On April 5, 1956, the Board of Commissioners appointed by the County Court, after notice to all the parties, met with them and proceeded to hear evidence on the value of the land in question. On the 9th of April, 1956, the Commissioners awarded the sum of $14,225 to all defend-

ants as their interests should appear. This amount included the value of the land actually taken, damages, if any, to the remaining land, and damages for whatever interest appellee had in the portion of the land he was then occupying under lease. Thereafter, the court, after a full hearing, entered a pre-trial order granting the severance and directing that that portion of the suit involving Failing, Epps and Jefferson Standard Life Insurance Company be set up under a separate cause number, to wit, No. 24986 on the docket of the court. This severance order contained the following finding of the court:

"* * * that Roy Shinault is a tenant-lessee under and by virtue of that certain lease agreement executed on the 18th day of January, 1952 between Russell E. Failing and Roy Shinault, a copy of which agreement has been filed herein and considered by the Court and under which agreement Russell E. Failing, as owner of the fee title to said property, is entitled to recover all proceeds in this condemnation proceeding except proceeds recoverable for the removal of improvements or damages to improvements upon such property, which latter proceeds are reserved to Roy Shinault, lessee."

The pre-trial severance order was examined, approved and agreed to by the attorneys for all parties, and it was entered by the County Judge, Hon. Nash Oliver. Thereafter, on October 10, 1956, the court entered a final judgment in the severed portion of the suit, being Cause No. 24986, in which the court found that the parties before it had reached an agreement, by the terms of which condemnors would take title to the land and Failing would recover from condemnors the sum of $12,000 as adequate compensation for the land taken and damages to the remaining property. The court further found that the lease, by virtue of which Cecil Epps was joined in the suit, had in all things terminated, and that Epps had no interest in the property at the time of condemnation. The court also found that Jefferson Standard Life Insurance Company had theretofore held a lien on the property, but that the lien had been fully satisfied and that the company had no interest in the property at the time of condemnation. The court also found and defined the interests and rights of the tenant, Roy Shinault, preserved to him by the order of severance mentioned above, and that Failing was entitled to recover all proceeds by reason of the taking, except such proceeds for the removal of improvements or damages to such improvements situated upon the land at the time of the taking.

The lease under which appellee claims in this cause was executed between Failing and appellee on the 18th of January, 1952, the lease to terminate, subject to certain conditions, on January 31, 1957. But for the institution of the eminent domain suit, the lease would have terminated six months after the date of the taking, which was July 18, 1956. The lease provided for a monthly rental of $85, payable on the first of each month during its term. Paragraph 6 of the lease gave appellee the right to remove any improvements he had placed thereon during the term of the lease. Paragraph 11 of the lease provided as follows:

"11. If the property subject to this lease, or any part thereof, shall be taken through the right of eminent domain, lessee shall have no right or interest in the proceeds received by the lessor in such condemnation, for such property taken. However, in the event any of the demised premises shall be taken as hereinabove mentioned and proceeds received for the removal of improvements thereon, or damages to such improvements, then and in that event such amount or amounts received as damages or for the removal of property shall belong to the lessee and paid directly to him. If condemnation results in taking only

a part of the demised premises, this lease contract and agreement shall remain in full force and effect so long as the remaining portion thereof is capable of being used for the purpose to which lessee had heretofore used such property, with a reduction in the rental price proportionate to the decreased utility to the land remaining."

Appellee went to trial on his second amended plea of intervention. In paragraph 1 we find: "This intervenor shows that by the condemnation and taking of such property by the said County of McLennan that the intervenor has been damaged in the loss of the leasehold interest, such leasehold interest and property belonging to the said intervenor herein, and as a result of said taking, intervenor has been damaged in the sum of $29,140.00." In paragraph 10, intervenor alleged: "Intervenor would further show unto the court that there is not enough property left as a result of the condemnation proceedings by the public authorities, for him to conduct his business thereon * * *." On trial appellee testified in part: "Q. Now when the County took this property from you, did it leave you enough on which to operate your yard? A. It did not."

Over timely objection the court permitted the following question: "Q. Mr. Shinault, what is the reasonable market value of the leasehold or unexpired term of the lease? That is, the price the leasehold interest would bring when offered for sale by one who desires to sell but is not obligated to sell, and is bought by one who is obliged to buy but is under no necessity of buying?" Appellant seasonably objected to the question on the ground that it did not elicit a proper element of damage because appellee was limited to recovering the cost of removing the improvements or damage to the improvements. In answer to the question, Mr. Shinault testified that his leasehold interest was worth about $35,000. Similar testimony, over timely objection, was admitted.

Appellants also offered in evidence the agreed severance order for the purpose of showing the agreement of the parties as to the recovery of appellee, which severance order was excluded by the court.

Going back to the court's charge, appellants seasonably filed exceptions and objections to the court's charge, and in paragraph 7 we find:

"Condemnors object and except to the Special Issue No. 1 for the reason that it submits to the jury an improper measure of damages in this case in that the pleadings, agreements and evidence in this case disclose that the only recovery which the intervenor, Roy Shinault, is entitled to have in this case is the cost of removing improvements or damages to improvements, and in this particular case the jury, under the Court's Special Issue No. 1, is permitted to take into consideration many other items and elements of recovery than cost of removing improvements or damages to improvements."

The foregoing exception goes to the heart of this cause and it should have been sustained, and the failure of the court to change his charge so as to comply with this exception makes it necessary to reverse and remand this cause for a new trial. Appellee specially pleaded the terms of his lease contract and made it a part of his ground of relief, and needless to say the provision in the lease contract specifically bound the appellee to his measure of recovery; and since he pleaded and admitted that the taking of the property by the condemnor rendered his leasehold interest useless to him because it did not leave him enough property on which to operate his yard, he is necessarily bound by the measure of damages provided in paragraph 11 of his lease contract, which says: " * * * in the event any of the demised premises shall be taken as hereinabove mentioned and proceeds received for the removal of improvements thereon, or damages to such

improvements, then and in that event such amount or amounts received as damages or for the removal of property shall belong to the lessee and paid directly to him." Appellee therefore agreed as to how his measure of damages would be fixed and determined, and the evidence being without dispute as to what happened, he is bound by the foregoing provision. In addition thereto, he was already bound by the provisions of the severance order heretofore set out, and it is obvious that the court tried this cause wholly on the wrong theory and in direct and irreconcilable conflict with the terms and provisions that appellee had agreed to in the execution of the leasehold contract. It is our view that the error of the trial court is so obvious that it does not need to be labored, and, being of such view, the cause must be reversed and remanded. (Needless to say that the verdict of the jury and the judgment of the court is highly excessive, and point 9 is sustained.)

Appellants have furnished us with an excellent brief and we cite the authorities they collate under points 1, 2, 3 and 4. It is our view, from what we have said, that it would serve no useful purpose to discuss the following decisions, which we believe are in point and controlling.[1]

Appellants seasonably requested the following special issues as a proper measure of damages for appellee's recovery. They are:

"What sum of money do you find from a preponderance of the evidence represents the damage, if any, done to the improvements on the land taken herein? Answer in dollars and cents, if any."

"What do you find from a preponderance of the evidence is the reasonable cost of removing the improvements from the land taken in this case? Answer in dollars and cents, if any."

1. American Creameries Co. v. Armour & Co., 149 Wash. 690, 271 P. 896; Appeal of Scholl, 292 Pa. 262, 141 A. 44; Brazos River Conservation & Reclamation Dist. v. Adkisson, Tex.Civ.App., 173 S.W.2d 294; Jenkins v. Devine Foods, Inc., 3 N.J. 450, 70 A.2d 736, 22 A.L.R.2d 593; Johnson v. Phelps, Tex.Com.App., 215 S.W. 446; Nichols on Eminent Domain, Vol. 2, p. 41, sec. 5.23(2); Orgel on Valuation Under Eminent Domain, Vol. 1, p. 524, sec. 121, Note 88; Provident Life & Accident Ins. Co. v. Hazlitt, 147 Tex. 426, 216 S.W.2d 805; Reeves v. City of Dallas, Tex.Civ.App., 195 S.W.2d 975; Rules 166 and 248, Texas Rules of Civil Procedure; United States v. Advertising Checking Bureau, 7 Cir., 204 F.2d 770; United States v. Certain Parcels, etc., D.C., 51 F.Supp. 811; United States v. 8286 Sq. Ft. of Space in Paca-Pratt Building, D.C., 61 F.Supp. 737; United States v. Petty Motor Co., 327 U.S. 372, 66 S.Ct. 596, 90 L.Ed. 729; 18 Amer.Jur. 866, sec. 232; 22 A.L.R.2d 599; 29 C.J.S., Eminent Domain § 198, p. 1106; 98 A.L.R. 254; Capitol Monument Co. v. State Capitol Grounds Commission, 220 Ark. 946, 251 S.W.2d 473; In re Allen Street and First Avenue, 256 N.Y. 236, 176 N.E. 377 (Appen.); In re Cross-Bronx Expressway, 195 Misc. 842, 82 N.Y.S.2d 55 (Appen.); In re Harlem River Drive, City of New York, 202 Misc. 540, 113 N.Y.S.2d 292 (Appen.); In re John C. Lodge Highway, 340 Mich. 254, 65 N.W.2d 820 (Appen.); In re Widening Third Street, 179 Minn. 258, 228 N.W. 162 (Appen.); Matter of Mayor, etc. of New York, 168 N.Y. 254, 61 N.E. 249 (Appen.); Sparrow Chisholm Co. v. City of Boston, 327 Mass. 64, 97 N.E.2d 172 (Appen.); Syracuse Grade Crossing Commission v. Delaware L. & W. R. Co., 197 Misc. 192, 97 N.Y.S.2d 279, modified 263 App.Div. 930, 32 N.Y.S.2d 620, affirmed 290 N.Y. 632, 49 N.E.2d 131 (Appen.); United States v. Fisk Building, D.C., 124 F.Supp. 259 (Appen.); United States v. Honolulu Plantation Co., 9 Cir., 182 F.2d 172, Id., 340 U.S. 820, 71 S.Ct. 51, 95 L.Ed. 602 (Appen.); United States v. Improved Premises, D.C., 54 F.Supp. 469 (Appen.); United States v. 21,815 Square Feet, etc., 2 Cir., 155 F.2d 898 (Appen.); United States v. 96,900 Square Feet, etc., D.C., 65 F.Supp. 833 (Appen.); United States v. 10,620 Square Feet, etc., D.C., 62 F.Supp. 115 (Appen.); United States v. 45,000 Square Feet, etc., D.C., 62 F.Supp. 121 (Appen.); United States v. 3.5 acres, etc., D.C., 57 F.Supp. 548, 549 (Appen.).

We suggest on re-trial that the court submit similar issues to the ones requested unless the testimony fails to tender same.

Because the case will have to be re-tried, the other errors assigned pass out of the case and should not arise on re-trial, and for that reason we do not think that any useful purpose can be obtained by discussion of the other points of error.

Accordingly, for the reasons stated, the judgment of the trial court is reversed and the cause is remanded and all costs taxed against appellee.